1  KENNETH A. KUWAYTI (CA SBN 145384)
   ERIC S. WALTERS (CA SBN 151933)
2  SUSAN VASTANO VAUGHN (CA SBN 223576)
   DAN WAN (CA SBN 238416)
3  KKuwayti@mofo.com
   MORRISON & FOERSTER LLP
4  755 Page Mill Road
   Palo Alto, California  94304-1018
5  Telephone: 650.813.5600
   Facsimile: 650.494.0792
6
   Attorneys for Plaintiff
7  ICONIX, INC.

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  ICONIX, INC.,                          Case No.    C-06-02201 SBA (JCS)

13              Plaintiff,
                                           **VERIFIED SECOND AMENDED**
14       v.                                **COMPLAINT FOR COPYRIGHT**
                                           **INFRINGEMENT, LANHAM ACT**
15  LANCE TOKUDA, JIA SHEN,                **VIOLATIONS, BREACH OF**
    NETPICKLE, INC.,                       **FIDUCIARY DUTY, BREACH OF**
16                                         **CONTRACT, INTERFERENCE**
                Defendants.                **WITH CONTRACT,**
17                                         **CONVERSION, UNFAIR**
                                           **COMPETITION,**
18                                         **CONSTRUCTIVE TRUST,**
                                           **VIOLATION OF CALIFORNIA**
19                                         **PENAL CODE § 502(C), AND**
                                           **VIOLATION OF THE**
20                                         **COMPUTER FRAUD AND**
                                           **ABUSE ACT**
21

22
                                           **DEMAND FOR JURY TRIAL**
23

24

25       Plaintiff Iconix, Inc. ("Iconix") alleges as follows:

26       1.   Iconix brings this action against Defendants Lance Tokuda, Jia Shen, and netPickle,

27  Inc. (collectively, "the Defendants").  This action arises out of wrongful conduct that began when

28

Dr. Tokuda and Mr. Shen were employed by Iconix and stole valuable inventions and software code that are owned by Iconix.

## THE PARTIES

2.   Iconix is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Mountain View, California.

3.   Defendant Lance Tokuda ("Tokuda") is a former employee and officer of Iconix; Tokuda resides in Foster City, California.

4.   Defendant Jia Shen ("Shen") is a former employee of Iconix; Shen resides in East Palo Alto, California.

5.   Upon information and belief, Defendant netPickle, Inc. ("netPickle") is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in Foster City, California, whose only two shareholders are Tokuda and Shen.  At all times relevant to this Complaint, netPickle, and its predecessor in interest, the entity dba rockmyspace, acted in concert with Tokuda and Shen and with full knowledge of their actions and was under Tokuda and Shen's control.

## JURISDICTION AND VENUE

6.   This Court has subject matter jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §§ 1331, 1338, 1367, 2201, the Copyright Act, 17 U.S.C. § 101, *et seq*., and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g).

7.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because, *inter alia¸* plaintiff Iconix has its principal place of business in this district, a substantial part of the events and omissions giving rise to the claims occurred here, and the Defendants reside in this district and are subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

8.   Iconix provides email identity services that proactively combat email fraud spawned by phishing.  Phishing is a form of email fraud where senders impersonate legitimate businesses and organizations to try to get recipients to divulge personal information such as passwords and

account numbers so the senders can steal the recipient's identity and/or funds from his or her account.

9. Tokuda and Shen began their employment at Iconix in December of 2004.

10. Tokuda was the Vice President of Engineering and Chief Technology Officer at Iconix and was in charge of setting the engineering and development direction for Iconix and for managing the engineering team. Among other things, Tokuda supervised the development of Iconix's new intellectual property and ideas.

11. Tokuda was an officer of Iconix.

12. Shen was the Manager of Client Development at Iconix and his responsibilities included overseeing the work of software development.

13. As employees of Iconix, Tokuda and Shen both signed contracts entitled, "Proprietary Information and Inventions Assignment Agreement" (the "Agreements"). The Agreements provide, in pertinent part that Tokuda and Shen agree to disclose, assign, and transfer to Iconix "any and all ideas, concepts, inventions, discoveries, developments, know-how, structures, designs, formulas, algorithms, methods, products, processes, systems and technologies in any stage of development that are conceived, developed or reduced to practice by [them] alone or with others…"

14. The Agreements also provide that neither Tokuda, nor Shen would "solicit, induce, recruit or encourage any person employed by [Iconix] to terminate his or her employment."

15. The Proprietary Information and Inventions Assignment Agreement that Tokuda signed and the Proprietary Information and Inventions Assignment Agreement that Shen signed are attached to this Complaint as Exhibits A and B respectively.

16. Moreover, both Tokuda and Shen were aware of Iconix's company policy, which prohibited moonlighting. This policy is set forth in the Iconix employee handbook, a copy of which was provided to both Tokuda and Shen when they started work at Iconix, and which both have acknowledged receiving. Among other things, this anti-moonlighting policy prohibited the defendants from engaging in any outside activity that created a conflict of interest with their

employment, and required them to obtain permission prior to engaging in any outside activity which might create such a conflict of interest.

17. In the fall of 2005, Iconix was actively generating, developing, and evaluating ideas for increasing traffic to Iconix's website. This activity included developing new features that would entice consumers to download Iconix's email identity product.

18. Of particular interest to Iconix engineers was the ability to penetrate community websites such as www.myspace.com, where web users create profiles and socially network with one another.

19. In the fall of 2005, Iconix engineers, including Tokuda discussed the idea of creating a customizable slideshow that would rotate through a user's pictures. The user would download Iconix's email identity product and then be able to use the customizable slideshow.

20. Iconix continued to evaluate the customizable slideshow idea and began to test it as a marketing strategy by the beginning of 2006.

21. In late December of 2005, Tokuda gave notice to Iconix. Tokuda's last day of employment was January 23, 2006. At the time of his resignation and on his last day of employment, when asked what he intended to do professionally, Tokuda responded that he had no definite plans and was not sure.

22. On or about January 20, 2006, Iconix discovered that in or around October 2005, while he was still an officer of Iconix, Tokuda secretly registered the domain name rockmyspace.com. Prior to that time, Tokuda had covertly begun developing a customizable slideshow feature for his own personal benefit.

23. While an Iconix officer, Tokuda also secretly formed his own company, netPickle Inc., for the purpose of exploiting the customizable slideshow feature for his own benefit.

24. In addition, Tokuda began soliciting other Iconix personnel, including Shen, Ryo Ishizuka, an Iconix engineer, and Bill Ames, the VP of Sales for Iconix and a member of the Iconix Board of Directors, to join him in creating his own customizable slideshow business; Tokuda's solicitation of Shen began on or before October 22, 2005.

25.   Tokuda's solicitation of Iconix employees and the Defendants' development of a competing customizable slideshow feature, website and business occurred on Iconix's company time and through the use of Iconix's computers and the Iconix network.  Defendants also used other Iconix personnel to assist them in the development and operation of rockmyspace, including, among others, Ryo Ishizuka and Bryan Talbot.  Tokuda and Shen would monitor and operate the rockmyspace website using their Iconix computers and over the Iconix network on a daily basis, including while they were at work at Iconix.

26. Ultimately, upon information and belief, Tokuda and netPickle also registered the domain name rockyou.com.  In February 2006, Defendants began operating the website previously known as www.rockmyspace.com using the new name www.rockyou.com, and currently market their customizable slideshow feature using this domain name.  The names rockyou.com and rockmyspace.com are used interchangeably herein.

27. When Iconix found out that Shen helped Tokuda take Iconix's ideas and property to form his own customizable slideshow business, Iconix was forced to terminate Shen's employment.  Defendants continued to use Iconix personnel and resources to do development work for rockmyspace and netPickle even after they left Iconix.  For example, Defendants continued to direct Mr. Ishizuka to do development work and operational work for rockmyspace using his Iconix computer even after they left Iconix.  In early February 2006, at Shen's request, and without any permission from Iconix, Ishizuka secretly uploaded a copy of Iconix's source code onto one of the servers that Defendants were using for rockmyspace, and which also contained the rockmyspace source code.  On information and belief, Defendants were aware that as an employee of Iconix, Ishizuka also had signed an Agreement with Iconix containing the same material terms as the Agreements signed by Defendants Shen and Tokuda.

28. On March 13, 2006, Iconix sent the Defendants a letter requesting that they return the customizable slideshow program and source code to its rightful owner, Iconix, and that they cease and desist all other activity in which they are engaged that uses software or derivative works owned by Iconix.

29. The Defendants refused to do so.

## FIRST CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT
### (Against All Defendants)

30.  Iconix realleges and incorporates by reference paragraphs 1 through 29 from above.

31. Iconix holds a valid and enforceable copyright in and to the customizable slideshow software code.

32. Iconix has registered the copyright with the United States Copyright Office, Registration No. TXu1-272-636.

33. The Defendants have infringed Iconix's copyright by reproducing and distributing copies of this software code in violation of 17 U.S.C. § 106.

34. The Defendants have infringed Iconix's copyright by reproducing and distributing derivative works of this software code in violation of 17 U.S.C. § 106.

35. Iconix is entitled to an injunction, damages, profits attributable to the infringement not taken into account in computing actual damages and an award of attorneys' fees under 17 U.S.C. § 504.

## SECOND CLAIM FOR RELIEF: LANHAM ACT
### (Against All Defendants)

36.  Iconix realleges and incorporates by reference paragraphs 1 through 29 from above.

37. On information and belief, the software code implementing the Defendants' customizable slideshow program, offered and sold by the Defendants contains code that is owned by Iconix.

38. In offering for sale and implementing customizable slideshow programs, the Defendants represent that they own and/or have a right to use all of the code implementing the customizable slideshow.

39. The Defendants' representation that they are the owners of the code implementing the customizable slideshow creates confusion as to the origin of their goods, services and other commercial activities.

40. Further, by failing to provide any attribution that Iconix is in fact the true owner of the customizable slideshow code, Iconix's contribution to the customizable slideshow program is

masked. This failure of attribution and designation constitutes "false designation of origin" under Section 43(a) of the Lanham Act.

41. The Defendants' acts constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

42. The Defendants' acts have irreparably damaged Iconix and will continue to so damage Iconix unless restrained by this Court.

43. Plaintiff Iconix is entitled to an injunction under 15 U.S.C. § 1116, and to damages, the Defendants' profits, and the costs of this action under 15 U.S.C. § 1117.

44. The Defendants' acts have been willful and with direct knowledge of Iconix's ownership interests, making this an "exceptional" case justifying an award against the Defendants' of treble damages, treble profits, and attorneys' fees.

## THIRD CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

45. Iconix realleges and incorporates by reference paragraphs 1 through 29 from above.

46. Throughout his employment at Iconix, defendant Tokuda was an officer of Iconix.

47. As an officer, Tokuda had a fiduciary duty to act in good faith and in the best interests of Iconix.

48. Tokuda was entrusted by Iconix, in particular, with the responsibility of developing new features that would entice consumers to download Iconix's email identity product. Tokuda breached his fiduciary duties to Iconix by, among other things, purporting to act on behalf of Iconix, when in reality he was acting in furtherance of his own purposes; exploiting his position and Iconix's know how to create his own company that would compete with Iconix; furthering his plot on Iconix's company time and using Iconix's resources to do so; inducing employees of Iconix to work in furtherance of this scheme on Iconix's company time and through the use of Iconix's company resources; covertly soliciting and/or inducing employees of Iconix to terminate their employment at Iconix to join a competitor; stealing Iconix's corporate opportunities for himself; not disclosing ideas, concepts, and inventions that he was obligated to disclose to Iconix; not cooperating in having the rights to his ideas, concepts, and inventions assigned to Iconix; and

engaging in outside activity that created a conflict of interest with his employment, and soliciting others at Iconix to do so, despite the fact that this was expressly forbidden by Iconix's company policy.

49. Despite his knowledge that Iconix was interested in penetrating community websites by using new features such as a customizable slideshow, Tokuda did not pursue that goal for Iconix. Instead he founded his own competing company and stole ideas belonging to Iconix for his competing company.

50. Further, with knowledge that Tokuda's acts were in breach of his duty as an officer of Iconix, Shen and netPickle aided and abetted this breach of fiduciary duty by providing substantial assistance and encouragement to Tokuda that furthered Defendants' scheme against Iconix. This assistance included, but was not limited to, actively developing the software code and business and investor materials for netPickle and rockyou.com, using Iconix resources, personnel and equipment and on Iconix time, soliciting Iconix employees, assisting Tokuda in taking the corporate opportunity that belonged to Iconix and exploiting it for Defendants' own use through the formation and operation of netPickle and rockyou.com; and helping to conceal Defendants' wrongful actions from Iconix senior management. Shen's substantial assistance in the tortious acts against Iconix were in breach of Shen's duties of loyalty as an employee and manager of Iconix. Shen and netPickle's actions were a substantial factor in causing harm to Iconix.

51. Because of Defendants' actions, Iconix has lost valuable employees and will be forced to incur significant time and expense to replace them, has been hindered in its pursuit of a customizable slideshow feature, and has been deprived of the corporate opportunity that Tokuda has taken for his own benefit. As a result, Iconix has been damaged in an amount to be proven at trial, and Defendants have been unjustly enriched in an amount to be proven at trial. In addition, unless the Defendants are restrained from continuing to usurp the corporate opportunity that belonged to Iconix and using property and ideas owned by Iconix, Iconix will be permanently and irreparably harmed. Iconix therefore requests and is entitled to injunctive relief as described more fully in the Prayer for Relief below.

52. The conduct of Defendants was willful, malicious, fraudulent, and in conscious disregard of Iconix's rights and interests and, upon information and belief, was undertaken with the intent to injure Iconix's property and legal rights. Accordingly, an award of exemplary damages is justified.

## FOURTH CLAIM FOR RELIEF: BREACH OF CONTRACT
### (Against Defendants Tokuda and Shen Only)

53. Iconix realleges and incorporates by reference paragraphs 1 through 29 from above.

54. As employees of Iconix, Tokuda and Shen signed the Agreements.

55. The Agreements provide, in pertinent part, that Tokuda and Shen agree to disclose, assign, and transfer to Iconix "any and all ideas, concepts, inventions, discoveries, developments, know-how, structures, designs, formulas, algorithms, methods, products, processes, systems and technologies in any stage of development that are conceived, developed or reduced to practice by [them] alone or with others…"

56. The Agreements also provided that neither Tokuda, nor Shen would "solicit, induce, recruit or encourage any person employed by [Iconix] to terminate his or her employment."

57. The Agreements further provided that "for a period of one (1) year after termination of my employment with the Company, I shall not directly or indirectly (i) divert or attempt to divert from the Company (or any affiliate) any business of any kind…"

58. Both Tokuda and Shen expressly agreed that "[their] violation of th[e] Agreement could cause [Iconix] irreparable harm and agree that [Iconix] shall have the right to apply to any court of competent jurisdiction for an order restraining any breach of threatened breach of th[e] Agreement."

59. Both Tokuda and Shen breached the Agreements by not disclosing, assigning, and transferring to Iconix all of their ideas, concepts, developments and know-how concerning customizable slideshows despite the fact that those ideas and concepts belonged to Iconix, and by creating a business based on ideas and technology that belonged to Iconix, using Iconix's resources to do so.

60. Tokuda and, upon information and belief, Shen, breached the Agreements by covertly soliciting and/or inducing employees of Iconix to terminate their employment at Iconix to join a competitor.

61. Iconix has fulfilled all of its obligations under the Agreements and is not in breach of any of its covenants under the Agreements.

62. Tokuda and Shen's multiple breaches of the Agreements have caused Iconix damages in an amount to proven at trial.

63. In addition, unless the Defendants are restrained from participating in competing business and using property and ideas owned by Iconix, Iconix will be permanently and irreparably harmed. Iconix therefore requests and is entitled to injunctive relief as described more fully in the Prayer for Relief below.

## FIFTH CLAIM FOR RELIEF: INTERFERENCE WITH CONTRACT
### (Against All Defendants)

64. Iconix realleges and incorporates by reference paragraphs 1 through 29 and 45 through 63 from above.

65. On information and belief, Defendants Tokuda and netPickle were aware of Plaintiff's Agreement with Shen and Iconix employee Ryo Ishizuka as a result of, among other things, Tokuda's position as their supervisor.

66. On information and belief, Defendants Shen and netPickle were aware of Plaintiff's Agreement with Tokuda and Iconix employee Ryo Ishizuka as a result of, among other things, Shen's work with Tokuda and Shen's position as Ishizuka's direct supervisor.

67. Tokuda, Shen and Ishizuka breached the Agreements with Iconix by not disclosing, assigning, and transferring to Iconix all of their ideas, concepts, developments and know-how concerning customizable slideshows developed, conceived or reduced while they were employed by Iconix, despite the fact that those ideas and concepts belonged to Iconix, and by creating a business based on ideas and technology that belonged to Iconix, using Iconix's resources to do so. Tokuda, Shen and Ishizuka also breached their Agreements with Iconix by taking Iconix's proprietary source code without permission.

68. Defendants Tokuda and netPickle intentionally encouraged Shen to withhold ideas, concepts, and know-how concerning customizable slideshows from Iconix, and instead to transfer all rights in such ideas, concepts, developments and know-how to netPickle, all in breach of Shen's Agreement with Iconix.

69. Defendants Shen and netPickle intentionally encouraged Tokuda to withhold ideas, concepts, developments and know-how concerning customizable slideshows from Iconix, and instead to transfer all rights in such ideas, concepts and know-how to netPickle, Inc., all in breach of Tokuda's Agreement with Iconix.

70. On information and belief, Defendants Shen, Tokuda and netPickle intentionally encouraged Ishizuka to transfer Iconix's proprietary source code to Defendants, and also intentionally encouraged Ishizuka to withhold ideas, concepts, developments and know-how concerning customizable slideshows from Iconix, and instead to transfer all rights in such ideas, concepts, developments and know-how to netPickle, Inc., all in breach of Ishizuka's Agreement with Iconix.

71. As a proximate result of Defendants' conduct and the above breach of the Agreements, Iconix has suffered damages in an amount to be proven at trial.

72. In addition, Defendants' conduct has permanently and irreparably harmed Iconix. Iconix is therefore entitled to injunctive relief as described more fully in the Prayer for Relief set forth below.

73. Defendants' aforementioned conduct was willful, malicious, fraudulent and in conscious disregard of Iconix's rights and interest, and, upon information and belief, was undertaken with the intent to injure Iconix's property and legal rights.   Accordingly, an award of exemplary damages is justified.

## SIXTH CLAIM FOR RELIEF: CONVERSION
### (Against All Defendants)

74. Iconix realleges and incorporates by reference paragraphs 1 through 73 from above.

75. From the beginning of its development through the present, Iconix owned and had the right to possess the rockmyspace.com business and website, including the software code and materials used to operate the website.

76. Defendants, individually and collectively, wrongfully converted ownership and possession of the rockmyspace.com website, business and associated materials developed at Iconix to their own use, while excluding the rightful owner Iconix from its rights to ownership and possession.

77. On or about January 13, 2006, Defendants Shen and Tokuda wrongfully purported to transfer ownership of all rights relating to the rockmyspace.com website to netPickle, Inc. in exchange for shares of stock in Defendant netPickle, Inc.  In turn, Defendant netPickle, Inc. wrongfully purported to purchase all rights relating to the rockmyspace.com website from Defendants Shen and Tokuda.

78. By these actions, Defendants have damaged and are continuing to damage Iconix in an amount to be proven at trial, including the loss of value of the website, business, and associated materials developed at Iconix, as well as time and money expended seeking to recover Iconix's property from Defendants.

79. Being deprived of the ownership and possession of the property described above  has permanently and irreparably harmed Iconix.  Iconix is therefore entitled to injunctive relief as described more fully in the Prayer for Relief set forth below.

80. The conduct of all Defendants in converting Iconix's property was willful, malicious, fraudulent and in conscious disregard of Iconix's rights and interest, and, upon information and belief, was undertaken with the intent to injure Iconix's property and legal rights. Further, despite knowing of Iconix's interest in the converted property, and despite Iconix notifying Defendants of its interest, Defendants failed and refused, and continue to fail and refuse, to return the property. Accordingly, an award of exemplary damages is justified.

## SEVENTH CLAIM FOR RELIEF: UNFAIR COMPETITION
### (Against All Defendants)

81. Iconix realleges and incorporates by reference paragraphs 1 through 29 and 45 through 80 above, and paragraphs 94 through 102 below.

82. The Defendants have engaged in unlawful, unfair, and fraudulent business acts. The Defendants knowingly engaged in unfair competition within the meaning of California Business and Professions Code section 17200 by, among other things, exploiting Tokuda and Shen's positions at Iconix and Iconix's know how to create a company that would compete with Iconix; furthering their plot on Iconix's company time and using Iconix's resources to do so; inducing employees of Iconix to work in furtherance of this scheme on Iconix's company time and through the use of Iconix's company resources, even after Tokuda and Shen left Iconix; covertly soliciting and/or inducing employees of Iconix to terminate their employment at Iconix to join a competitor; stealing Iconix's corporate opportunities for themselves; not disclosing ideas, concepts, and inventions that Tokuda and Shen were obligated to disclose to Iconix; not cooperating in having the rights to Tokuda and Shen's ideas, concepts, and inventions assigned to Iconix; engaging in activities that created a conflict of interest with Tokuda and Shen's employment, despite the fact that this was expressly forbidden by Iconix's company policy, and stealing ideas and work belonging to Iconix and passing them off as their own.

83. Defendants further engaged in unfair competition under section 17200 by violating Labor Code sections 2859 and 2863, by breaching and aiding and abetting breach of fiduciary duty, by converting Iconix's business property, by interfering in Iconix's contracts with its employees, and by violating California Penal Code section 502(c) and 18 U.S.C. section 1030(a).

84. The Defendants deceived Iconix by not disclosing to Iconix ideas and inventions that are owned by Iconix despite their obligation to do so and by purporting to act on Iconix's behalf and in its best interests while setting up their own competing enterprise. The Defendants also misrepresented that they are the owners of the code implementing the customizable slideshow. These actions deceive the public as to the source of the products marketed by the Defendants, which, in reality, are based on technology developed at and owned by Iconix.

85. Defendants knew that the conduct described above was improper and that they were unlawfully and fraudulently stealing Iconix's ideas and property when they sought to found a competing business.

86. The unfair practices are continuing in that the Defendants have refused to return Iconix's property to Iconix and to stop using Iconix's software code and materials.

87. As a direct and proximate result of this conduct, the Defendants have received, and are making use of technology that rightfully belongs to Iconix.

88. Accordingly, Iconix is entitled to restitution and the return of its technology.

89. Iconix is further entitled to a temporary, preliminary, and permanent injunction pursuant to Business and Professions Code section 17203 as described more fully in the Prayer for Relief below.

## EIGHTH CLAIM FOR RELIEF: CONSTRUCTIVE TRUST
### (Against All Defendants)

90. Iconix realleges and incorporates by reference paragraphs 1 through 89 above.

91. Through purposeful violation of trust and other wrongful acts as described herein, Defendants wrongfully gained property and benefits that rightfully belong to Iconix.

92. As a result of Defendants' wrongful gains, upon information and belief, Defendants have been unjustly enriched, and have unjustly retained that benefit.

93. Equity demands that the property and benefits wrongfully gained by Defendants, including software code taken from Iconix, and all derivatives thereof, and all materials associated with the operation of netPickle, Inc., and any related entity or website, and all assets, earning and other benefits derived from netPickle, Inc., and any related entity or website, be held in constructive trust for Iconix, and that the right, title and interest to netPickle and any related entity or website be transferred to Iconix, and that a proper accounting should be delivered to Iconix.

## NINTH CLAIM FOR RELIEF: PENAL CODE § 502(c)
### (Against All Defendants)

94. Iconix realleges and incorporates by reference paragraphs 1 through 29 above.

95. California Penal Code section 502(c)(1) makes it a public offense for any person knowingly to access and without permission alter, damage, delete, destroy, or otherwise use any data, computer, computer system, or computer network in order to either devise or execute any scheme or artifice to defraud, deceive, or extort, or wrongfully control or obtain money, property, or data.

96. California Penal Code section 502(c)(2) makes it a public offense for any person knowingly to access and without permission take, copy, or makes use of any data from a computer, computer system, or computer network, or take or copy any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

97. California Penal Code section 502(c)(4) makes it a public offense for any person knowingly to access and without permission add, alter, damage, delete, or destroy any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network.

98. Defendants violated Penal Code section 502(c) by, among other things: accessing and using the Iconix computers and computer systems to secretly operate and develop the website rockmyspace.com for their own benefit and to further their own fraudulent scheme; to take and copy the software code and other materials used to operate the rockmyspace website and business; to delete from the Iconix computers that had been issued to them the software code at issue in this lawsuit and other materials relating to the operation of the rockmyspace.com website and their work at Iconix, and by stealing a copy of the Iconix source code from the Iconix computers and network without authorization after their employment had been terminated, and by uploading a copy of that source code onto a server used for rockmyspace.

99. Defendants had no permission from Iconix to perform any of these acts. Defendants had, in fact, signed computer usage agreements providing that information on Iconix company computers was company property, that such information was not to be transferred or stored on non-company machines or disks, and that Iconix computers and the Iconix network were not to be used for personal use.

100. Defendants' actions were undertaken in furtherance of the wrongful and scheme described in detail above, and were designed to defraud and deceive Iconix and to wrongfully obtain control over property and data that rightfully belonged to Iconix.

101. As a direct and proximate cause of Defendants' acts, Iconix has suffered and will continue to suffer injury and, pursuant to California Penal Code section 502(e)(1), are entitled to an injunction and damages in an amount to be proven at trial.

102. Iconix is further entitled to an award of attorneys' fees pursuant to California Penal Code section 502(e)(2).

103. By these acts, Defendants are guilty of oppression, fraud, malice, and wanton disregard of Iconix's rights, thereby entitling Iconix to punitive damages pursuant to California Penal Code section 502(e)(4), in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF: COMPUTER FRAUD AND ABUSE ACT
### (Against All Defendants)

104. Iconix realleges and incorporates by reference paragraphs 1 through 29 and 93 through 102 above.

105. 18 U.S.C. section 1030(a)(2)(C) makes it a public offense for any person to intentionally access a computer or exceed authorized access and thereby obtain information from any computer used in interstate commerce or communication without authorization if the conduct involves interstate commerce.

106. 18 U.S.C. section 1030(a)(4) makes it a public offense to knowingly and with intent to defraud access a computer used in interstate commerce or communication without authorization or exceed authorized access, and by means of such conduct further the intended fraud and obtain anything of value unless the object of the fraud and the thing obtained is only use of the computer and the value of such use is not more than $5,000 in any one year period.

107. 18 U.S.C. section 1030(a)(5)(ii) makes it a public offense for any person to intentionally access a computer used in interstate commerce or communication without authorization, and as a result of such conduct, recklessly cause damage to another person, resulting in loss to one or more persons in a one-year period of at least $5,000.

108.     18 U.S.C. section 1030(a)(5)(iii) makes it a public offense for any person to intentionally access a computer used in interstate commerce or communication without authorization, resulting in loss to one or more persons in a one-year period of at least $5,000.

109.     Iconix's computer networks and computer systems are used in interstate commerce and interstate communication.

110.     Through the conduct described above, including without limitation the conduct described in paragraphs 97 through 99, which involves interstate commerce, Defendants violated 18 U.S.C. sections 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(ii), and 1030(a)(5)(iii).

111.     Defendants had no permission from Iconix to perform any of these acts.

112.     Defendants' conduct recklessly caused damage to Iconix in an amount to be proven at trial exceeding $5,000.

113.     In addition, Defendants' conduct has permanently and irreparably harmed Iconix. Iconix is entitled to injunctive relief pursuant to 18 U.S.C. section 1030(g) as described more fully in the Prayer for Relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Iconix prays for a judgment against the Defendants that:

1.   Temporarily, preliminarily, and permanently enjoins the Defendants from (1) copying or distributing Iconix's copyrighted software code and from creating derivative works of Iconix's copyrighted software code; (2) further violations of Section 43(a) of the Lanham Act; (3) retaining or using Iconix's technology or "any and all ideas, concepts, inventions, discoveries, developments, know-how, structures, designs, formulas, algorithms, methods, products, processes, systems and technologies in any stage of development" assigned by Defendants to Iconix under the terms of their Agreements; (4) use of the rockmyspace.com and rockyou.com websites; (5) continuing to deprive Iconix of the corporate opportunity that rightfully belongs to it;

2.   Awards Iconix damages (actual or statutory, if Iconix were to elect statutory damages), profits attributable to the infringement not taken into account in computing actual

damages and an award of attorneys' fees under 17 U.S.C. § 504 for Iconix's copyright infringement;

3. Declares that the Defendants have engaged in willful copyright infringement under 17 U.S.C. § 504(c);

4. Declares that Iconix owns the copyright to all customizable slideshow software and source code written by (or written at the direction of) Tokuda and/or Shen after their employment at Iconix began and that Iconix owns the rockyou.com website and associated business and materials developed at Iconix;

5. Awards compensatory damages in an amount to be proven at trial arising from the Defendants' violations of the Lanham Act;

6. Awards to Iconix injunctive relief, compensatory and punitive damages in an amount to be proven at trial and an award of attorneys' fees arising from Defendants' violations of California Penal Code section 502(c);

7. Awards to Iconix injunctive relief and damages in an amount to be proven at trial arising from Defendants' violations of the Computer Fraud and Abuse Act;

8. Awards to Iconix an accounting of Defendants' earnings and profits and an award of those earnings and profits in an amount to be proven at trial;

9. Awards to Iconix the amounts by which Defendants have been unjustly enriched in an amount to be proven at trial;

10. Awards to Iconix the value of the rockmyspace.com website and business at the times they were converted by Defendants in an amount to be proven at trial, or, in the alternative, damages to Iconix from Defendants' conversion of the rockmyspace website and business in an amount to be proven at trial;

11. Imposes a constructive trust for the benefit of Iconix on the rockyou.com website and business, the software code taken from Iconix, and all derivatives thereof, and all materials associated with the operation of netPickle, Inc., and any related entity or website, and all assets, earning and other benefits derived from netPickle, Inc., and any related entity or website; that

requires that a proper accounting be delivered to Iconix; and requires that the right, title and interest to netPickle and any related entity or website be transferred to Iconix;

12. Awards Iconix its costs and expenses of suit incurred and attorneys' fees as allowed by law;

13. Awards treble damages for willful violations of the Lanham Act;

14. Awards restitution and the return of all material owned by Iconix that is in the Defendants' possession, custody, or control;

15. Awards specific performance of The Agreements by requiring the Defendants to assign and transfer to Iconix all customizable slideshow software and source code written by (or written at the direction of) Tokuda and/or Shen after their employment at Iconix began, as well as, "any and all ideas, concepts, inventions, discoveries, developments, know-how, structures, designs, formulas, algorithms, methods, products, processes, systems and technologies in any stage of development" that were "conceived, developed or reduced to practice by [them] alone or with others;"

16. Awards punitive damages in an amount to be established at trial; and

17. Grants Iconix such other and further relief as the Court may deem proper.

Dated: September 12, 2006       KENNETH A. KUWAYTI
ERIC S. WALTERS
SUSAN VASTANO VAUGHN
DAN WAN
MORRISON & FOERSTER LLP


By:   /s/ Kenneth A. Kuwayti /s/
        Kenneth A. Kuwayti

        Attorneys for Plaintiff
        ICONIX, INC.

1

**JURY DEMAND**

2      Pursuant to Federal Rule of Civil Procedure 38(b), Iconix, Inc. hereby demands trial by

3   jury of all issues properly triable thereby.

4   Dated: September 12, 2006          KENNETH A. KUWAYTI
                                       ERIC S. WALTERS
5                                      SUSAN VASTANO VAUGHN
                                       DAN WAN
6                                      MORRISON & FOERSTER LLP

7

8                                 By:   /s/ Kenneth A. Kuwayti /s/
                                       Kenneth A. Kuwayti
9
                                       Attorneys for Plaintiff
10                                     ICONIX, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**FED. R. CIV. P. 7.1 DISCLOSURE AND**

2

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

3       Pursuant to Federal Rule of Civil Procedure 7.1, Iconix, Inc. states that it has no parent

4   corporation, and no publicly traded corporation owns 10% or more of the stock of Iconix, Inc.

5       Pursuant to Local Rule 3-16, the undersigned certifies that as of this date, other than the

6   named parties, there is no such interest to report.

7   Dated:  September 12, 2006                    KENNETH A. KUWAYTI
                                                   ERIC S. WALTERS
8                                                  SUSAN VASTANO VAUGHAN
                                                   DAN WAN
9                                                  MORRISON & FOERSTER LLP

10

11                                         By:   /s/ Kenneth A. Kuwayti /s/
                                                 Kenneth A. Kuwayti
12
                                                 Attorneys for Plaintiff
13                                               ICONIX, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28